**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SUSAN MARIE BEHRENS, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:21-CV-00144-SDJ- |
| v. | § | CAN |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying her claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

**I.    PROCEDURAL HISTORY OF THE CASE**

On January 14, 2018, Plaintiff Susan Marie Behrens ("Plaintiff") filed an application for disability and disability insurance benefits [TR 10, 60, 81, 83, 105, 178-179]. Plaintiff also filed an application for supplemental security income on June 26, 2018 [TR 10, 71, 82, 94, 106, 169-177]. Plaintiff alleges an onset disability date of January 4, 2017 [TR 169]. On July 10, 2019, the claims were initially denied [TR 10, 111-116], and upon reconsideration on August 29, 2019 [TR 10, 120-123], Plaintiff's applications were again denied. On September 17, 2019, [TR 124-125] Plaintiff requested an administrative hearing ("Hearing"), which was held before an Administrative Law Judge ("ALJ") on July 30, 2020 [TR 10]. At Hearing, the ALJ heard testimony from Plaintiff, Plaintiff's attorney representative, and a vocational expert ("VE") [TR 7-

29].  On September 2, 2020, the ALJ issued an unfavorable decision [TR 7-29].  Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 1-4].  The Appeals Council denied Plaintiff's request on December 16, 2020, making the decision of the ALJ the final decision of the Commissioner [TR 1-4].  On February 19, 2021, Plaintiff filed the instant suit [Dkt. 1].  On September 13, 2021, the Administrative Record was received from the Social Security Administration [Dkt. 15].  Plaintiff filed her Opening Brief on October 13, 2021 [Dkt. 17], the Commissioner filed its Brief in Support of the Commissioner's Decision on December 8, 2021 [Dkt. 18], and Plaintiff filed her Reply Brief on December 17, 2021 [Dkt. 19].

## II.    STATEMENT OF FACTS

### 1.  Age, Education, and Work Experience

Plaintiff was born on September 4, 1972, making her forty-five (45) years of age at the time of alleged onset of disability [TR 169].  Plaintiff's age classification at all relevant times was that of a "younger person… more limited in [her] ability to adjust to other work than persons who have not attained age 45."  *See* 20 C.F.R. § 404.1563(e).  Plaintiff completed high school [TR 38], and has past work experience as a cook helper, dry cleaning attendant, fast food worker, and administrative clerk [TR 54-55].  Plaintiff has not engaged in substantial gainful activity since January 4, 2017, the alleged onset date [TR 13, 39].

### 2.  Relevant Medical Records

The ALJ found Plaintiff has the severe impairments of lower thoracic and lumbar degenerative disc disease with lumbar radiculopathy; carpometacarpal (CMC) arthritis of bilateral thumbs, status-post resection; obesity; and polyarthritis [TR 13].  Relevant to these conditions and the argument raised by Plaintiff are the medical opinions and evaluations from Dr. James E. Froelich, D.O. ("Dr. Froelich"), Dr. Jeanine Kwun, M.D. ("Dr. Kwun"), Dr. Dorothy Leong, M.D.

("Dr. Leong"), Dr. John G. Papaila, M.D. ("Dr. Papaila"), Dr. Pratap R. Tummala, M.D. ("Dr. Tummala"), and Dr. Ajay Harparat, M.D. ("Dr. Harparat") summarized as follows.

### a. Dr. Froelich

Plaintiff has treatment records from Dr. Froelich spanning from February 17, 2017, to January 7, 2020 [TR 884-925]. These records discuss the back and hand pain observed in Plaintiff [TR 884-925]. Of note, on July 2, 2019, Dr. Froelich noted in his treatment records "Lyrica has made everything 100% better" for Plaintiff [TR 862]. Approximately one year later, on July 15, 2020, Dr. Froelich completed a Medical Source Statement ("MSS"), which constitutes a checkbox list form titled "Treating Physician's Clinical Assessment" [TR 949-951]. The form asks whether Plaintiff can perform certain activities on a sustained basis, which it defines as "forty hours per week, less reasonable time daily for lunch and breaks, taking into account the effects, if any, of pain and/or prescribed medication" [TR 949]. For the activities listed under Lift and Use of Hands, Dr. Froelich wrote that Plaintiff remains unable to perform those activities due to wrist weakness, weak grasping, and loss of feeling in the hands [TR 949]. Under Other Physical Factors, Dr. Froelich wrote none for each of the activities [TR 949]. For Stand/Walk and for Sit, Dr. Froelich checked "Less than 2 hours per regular work day" but stated that Plaintiff could sit for two hours per regular work day if allowed to stand "every 10-15 minutes" [TR. 950]. If Plaintiff were to return to work and needed a minimum rest period, Dr. Froelich checked that even six hours of rest periods per day would not be "adequate," and that "patient requires complete freedom to rest frequently without restriction for the remainder of the work day when not sitting, standing, or walking" [TR 950]. He checked that Plaintiff needs this much rest time during an 8-hour workday to "relieve pain arising from a documented medical impairment" and to "relieve fatigue arising from a documented medical impairment" [TR 950]. As "Supporting Objective Tests/Laboratory

Results," Dr. Froelich checked lines for X-Rays, MRI, EMG, and Cat Scan [TR 950]. For "Objective signs of pain," Dr. Froelich checked joint deformity, swelling (of hands), muscle spasm, and limitation of motion [TR 950]. The form then asks if Plaintiff's impairments are "*reasonably consistent* with the symptoms and functional limitations described in this evaluation" [TR 950-951]. Dr. Froelich responded, "yes; consistent and worsen at times" and also "[s]he is obviously limited by pain" [TR 950-951]. Under the section stating, "[p]ain is," Dr. Froelich checked "[s]evere," meaning the pain "would preclude the activity precipitating the pain" [TR 951]. Finally, Dr. Froelich stated that Plaintiff's impairments would produce "bad days or worse days" and that Plaintiff "[c]annot work" [TR 951].

### c. Other Treating Physicians- Drs. Papaila, Tammala and Harpavat

In addition to examinations by Dr. Froelich, Plaintiff underwent a lumbar and cervical MRI and met with Dr. Papaila, Dr. Tammala, and Dr. Harpavat regarding Plaintiff's back, hand, and joint pain. Plaintiff had a cervical MRI on June 12, 2017, and a lumbar MRI on November 27, 2017 [TR 730-731; 900-901]. The lumbar MRI study showed mild to moderate impingement of the neural exit canals bilaterally through the lumbar spine [TR 900-901]. The cervical MRI study showed mild to moderate neuroforaminal narrowing [TR 730-731]. Both the cervical and lumbar MRI showed no significant canal or central spinal stenosis [TR 730-731; 900-901].

Dr. Papaila, Plaintiff's orthopedic surgeon, examined Plaintiff's EMG/NCS and noted Plaintiff's responses to her bilateral hand surgeries [TR 800-830]. Dr. Papaila found nothing abnormal from Plaintiff's EMG/NCS [TR 825]. Dr. Papaila also explained that Plaintiff responded well to her bilateral hand surgeries but made less progress on her left side than her right [TR 802]. On December 10, 2018, Dr. Papaila noted that Plaintiff had some pain on her left thumb area, that she had not gone to therapy yet, and that he hoped to turn that arthritic pain around with a low-

dose prednisone [TR 802]. On January 7, 2019, Dr. Papaila noted that Plaintiff hurt everywhere with the most pain at the left ulnar stylus wrist joint [802].

Dr. Tammala, Plaintiff's rheumatologist, and Dr. Harpavat, Plaintiff's pain management provider, both examined Plaintiff [TR 424-427, 846]. Dr. Harpavat examined Plaintiff for low back pain and both leg radiation [TR 425]. In the examinations, Dr. Harpavat noted that Plaintiff exhibited "quite significant pain behavior today as well as poor effort during her examination" [TR 425]. Dr. Harpavat also noted a slow, antalgic gait, weakness and guarding of both legs, positive straight leg raising, an inability to toe or heel walk, restricted lumbar spine range of motion in flexion and extension, weakness of right hip flexors which may be from poor effort or purely coming from the spine, and low back paraspinal tenderness [TR 424, 426-427]. In addition, Dr. Tammala examined Plaintiff for joint pain [TR 846]. In the examination, Dr. Tammala noted normal hand and grip strength [TR 846]. Dr. Tammala also noted reduced lumbar range of motion, painful flexion and extension, and an antalgic gait [TR 846].

### c. State Agency Medical Consultants- Dr. Kwun and Dr. Leong

At the initial level, on July 1, 2019, Dr. Kwun completed Plaintiff's disability determination [TR 69]. Dr. Kwun found Plaintiff's statements about the intensity, persistence, and functionally limiting effects of her stated symptoms were not substantiated by objective medical evidence [TR 65]. More specifically, Plaintiff's statements about her symptoms were only partially consistent with the total medical and non-medical evidence in the file [TR 65]. As to Plaintiff's RFC, Dr. Kwun found Plaintiff could perform a reduced range of light work [TR 67-69]. Dr. Kwun specifically opined Plaintiff has exertional limitations for: lifting/carrying occasionally of 20 pounds, and frequently for 10 pounds; standing and walking with normal breaks about 6 hours in an 8-hour workday; sitting for about 6 hours in an 8-hour workday with normal

breaks; and an unlimited amount of pushing and/or pulling [TR 66].   Plaintiff's postural limitations, relevant here, are: frequent climbing of ramps/stairs, stooping/bending, kneeling, crouching; occasional, balancing and crawling; and never climbing ladders/ropes/scaffolds [TR 66].  No manipulative limitations were found [TR 66].  On reconsideration, on August 27, 2019, Dr. Leong considered additional medical evidence received, including findings from Dr. Tammala [TR 84] concluding that Plaintiff could perform work at the medium exertional level [TR 92].

### 3. Hearing Testimony

#### a. Plaintiff's Testimony

On July 30, 2020, the ALJ held a Hearing, and he and Plaintiff's attorney questioned Plaintiff [TR 31-58].  Plaintiff answered questions from the ALJ regarding her past work, her symptoms, and her limitations at work and in engaging in daily life activities [TR 37-53].  The ALJ asked Plaintiff about the last time she worked and whether she quit or had been terminated. Plaintiff explained that over time, her body kept getting worse, which limited her ability to bend, lift, and stand and eventually led her to quitting her job [TR 39].  Plaintiff added that she struggled to stand on her feet for more than five minutes, that her fingers sometimes went numb, and she struggled to hold things [TR 39-40].  When describing the pain, Plaintiff stated that her hands felt dull pain at a six out of ten on a ten-point scale [TR 40], and her lower back felt pain extending down the legs at a nine out of ten [TR 41].  Plaintiff then stated that she could no longer do laundry, cook, or do dishes, and that she spent much of her time watching tv and reclining during the day [TR 42].

#### b. VE's Testimony

The VE testified about Plaintiff's past employment history and noted two classifications as medium and two as light work [TR 54-55].  The ALJ posed three hypotheticals to the VE and

asked whether a person with such limitations in the hypotheticals could perform Plaintiff's past relevant work [TR 55-56]. Plaintiff's attorney representative declined to question the VE [TR 56]. The VE first classified Plaintiff's past work as follows:

> Q      And have you reviewed the file and/or listened to the testimony of the claimant concerning her past work?
> A      Yes.
> Q      Can you tell me about it, please?
> A      Yes, sir. We have a cook helper, which is DOT 318.687-010. This is a medium occupation, SVP 2. Next, we have a dry-cleaning attendant. This is DOT 369.677-010. This is a medium occupation, SVP 2. Next, we have a fast-food worker. This is DOT 311.472-010. This is a light occupation, SVP 2. Last, we have an administrative clerk. This is DOT 219.362-010. This is a light occupation, SVP 4 medical.

[TR 54-55]. The ALJ then posed hypothetical limitations to the VE, asking which past work a person could perform with the various limitations proposed. The VE testified that an individual with the limitations in the first hypothetical could not perform Plaintiff's past work but could perform work in the national economy:

> Q      If you could assume a hypothetical individual, the claimant's age and education. Further assume the individual has the same past work experience that you just described, and that person would be capable of lifting and or carrying ten pounds occasionally, less than ten pounds frequently. Would be able to sit for six hours out of an eight-hour day. The individual should be able to alternate between sitting and standing at will, without leaving the workstation, or going off-task. Pushing and pulling would be unlimited, except for the lifting and carrying restrictions. Frequent handling, and fingering bilaterally, frequent climbing of ramps, stairs, stooping, kneeling and crouching. Occasional balancing and crawling. No climbing of ladders, ropes, or scaffolds. Would that hypothetical individual be capable of performing any of the claimant's past work?
> A      No.
> Q      Would there be any work in the U.S. national economy for such an individual?
> A      Yes, sir. I have an order clerk, food and beverage. This is DOT 209.567-014. This is a sedentary occupation, SVP 2. U.S., 40,000. We have a document preparer. This is DOT 249.587-018. This is a sedentary occupation, SVP 2, U.S., 47,000. We have an addresser. This is Dot 209.587-010. This is a sedentary occupation, SVP 2, U.S., 13,000.

[TR 55].  The ALJ then posed two additional hypotheticals.  On the first additional hypothetical, the ALJ modified handling and fingering bilaterally to occasional, and the VE stated that modification would preclude all employment [TR 56].  On the second hypothetical, the ALJ made a new hypothetical from scratch, and the VE stated that a person under that new hypothetical would have no opportunity for competitive employment:

> Q      What if you were to modify the handling and fingering bilaterally to occasional?  Would that - - those same jobs with those same numbers still be available?
> A      No, sir.  I believe that would erode the sedentary occupational base and preclude all contended employment.
> Q      If we were to start over with a new hypothetical, a person who is not able to lift.  Unable to use hands for pushing, pulling, or handling.  Standing and marking of less than two hours, sitting for two hours out of eight.  Would there be any competitive employment for such an individual?
> A      No

[TR 56].  Plaintiff's attorney did not have any questions, and the VE confirmed no conflict existed between her testimony and the DOT [TR 56].

## III.    FINDINGS OF THE ALJ

### 1. Sequential Evaluation Process

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability.  20 C.F.R. §404.1520.  First, a claimant engaged in substantial gainful employment at the time of her disability claim remains not disabled.  *Id*. § 404.1520(b).  Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience.  *Id*. § 404.1520(c).  Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1.  *Id*. § 404.1520(d).  Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered

disabled if she can perform her past work based on her residual functional capacity. *Id*. § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. *Id*. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability, and at the last step, the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id*.

### 2. *ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of the Plaintiff's case, the ALJ determined through the sequential evaluation process that the Plaintiff did not suffer from a disability [TR 13-24]. At step 1, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 4, 2017, the date of alleged onset [TR 13]. At step 2, the ALJ found Plaintiff has severe impairments for lower thoracic and lumbar degenerative disc disease with lumbar radiculopathy, carpometacarpal (CMC) arthritis of bilateral thumbs, status-post resection, obesity, and polyarthritis [TR 13-15]. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) [TR 15-17]. At step four, the ALJ determined that Plaintiff maintains the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in CFR 404.1567(a) and 416.967(a) except the claimant should be allowed to alternate between sitting and standing at will without leaving the workstation or going off-task. The claimant's ability to push and/or pull is unlimited except for the lifting and carrying restrictions. The claimant would be limited to frequent handling and fingering bilaterally; and frequent climbing of ramps and stairs, stooping, kneeling, and crouching. The claimant is limited to occasional balancing and crawling. The claimant cannot climb ladders, ropes, and scaffolds.

[TR 17-22].  Continuing the step four analysis, the ALJ determined that Plaintiff remains unable to perform past relevant work, specifically:

- Cook Helper, DOT #: 318.687-010, medium, SVP 2;
- Dry Cleaning Attendant, DOT #: 369.677-010, medium, SVP 2;
- Fast Food Worker, DOT #: 311.472-010, light, SVP 2;
- Administrative Clerk, DOT #: 219.362-010, light, SVP 2

[TR 22].  At the final step, the ALJ determined that the claimant maintains the residual functional capacity to engage in work available in the national economy, specifically:

- Order Clerk, DOT #: 209.567-014, sedentary, SVP 2, 40,000 jobs nationally;
- Document Preparer, DOT #: 249.587-018, sedentary, SVP 2, 47,000 jobs nationally;
- Addresser, DOT #: 209.587-010, sedentary, SVP 2, 13,000 jobs nationally

[TR 23-24].  Based on this determination, the ALJ concluded Plaintiff was not disabled from January 4, 2017, through the date of the ALJ's decision, September 2, 2020 [TR 24].

## STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, No. 20-60856, 2021 WL 5563333, at *1 (5th Cir. Nov. 29, 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted)); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert denied, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).  Substantial evidence "need not be a preponderance." Webster, 2021 WL 5563333, at *1 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). The ALJ resolves conflicts in the evidence; the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though the Court will scrutinize the record to determine if

evidence exists. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process. 20 C.F.R. §404.1520(a)(4).

## ANALYSIS

Plaintiff argues on appeal that substantial evidence does not support the determination of the Plaintiff's residual functional capacity ("RFC"). More specifically, Plaintiff articulates "the sole issue" presented for review is whether "the ALJ properly reject[ed] all medical opinion evidence of record and substitute[ed] his own medical judgment to determine Plaintiff's residual functional capacity" [Dkt. 17 at 2].

### Substantial Evidence Supports the ALJ's RFC Assessment

The RFC is an assessment based on all the relevant evidence of a claimant's maximum ability to do work on a sustained basis in an ordinary work setting despite his or her impairments.[1] 20 C.F.R. § 404.1545(a); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is the most a claimant can do despite her physical limitations. The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The Court must determine whether the record as a whole "yields such evidence as would allow a reasonable mind to accept the conclusions reached by the

---

[1] When considering a claimant's RFC, the Commissioner assesses an applicant's physical, mental, and sensory abilities, evaluates how those abilities apply to that applicant's work-related functioning, and finally considers whether that applicant can sustain work-related activities in a work setting on a regular and continuing basis. *See* 20 C.F.R. § 404.1545(b)-(d); S.S.R. 96-8p, 1996 WL 374184 at *3-4.

ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *see Perez v. Barnhart*, 416 F.3d 457, 461 (5th Cir. 2005); *Jones v. Saul*, No. 4:20-CV-00772-BP, 2021 WL 2895867, at *4-5 (N.D. Tex. July 9, 2021) (finding no error where the ALJ determined that [the treating physician's] opinion was inconsistent with the record as to the limitations he expressed).[2]

The Social Security Administration's updated rule for assessing medical opinion evidence governs all claims filed on or after March 27, 2017, including Plaintiff's here. *See* 20 C.F.R. § 404.1520c. The old rule required the ALJ to give a treating physician's opinion "controlling weight" in the absence of specific mitigating factors, and to "always give good reasons" in the determination for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). The new rule eliminates the "controlling weight" given to treating physicians. 20 C.F.R. § 404.1520c(a). The new rule, 20 C.F.R. § 404.1520c, provides that the ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the [claimant's] medical sources." 20 C.F.R. § 404.1520c(a).[3] A medical opinion is a statement about what functional limits a claimant may have from an impairment. 20 C.F.R. § 404.1513(a)(2). Rather, the ALJ shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship

---

[2] The ALJ "does not have 'to state the weight given to each symptom and diagnosis in the administrative record.'" *Mary C. R. v. Kijakazi*, No. 3:20-CV-00286-BT, 2021 WL 4476764, at *3 (N.D. Tex. Sept. 30, 2021) (quoting *Michelle K. M. v. Berryhill*, 2019 WL 1243355, at *13 (N.D. Tex. Mar. 18, 2019)). Failure to "mention a particular piece of evidence does not necessarily mean that [the ALJ] failed to consider it" when the ALJ "states explicitly that [she] considered the entire record" in the opinion. *Id.* (quoting *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005)).

[3] In transitioning to the new rule, the administration noted, "[t]he current policies that focus upon weight, including the treating source rule, have resulted in reviewing courts focusing more on whether we sufficiently articulated the weight we gave opinions rather than on whether substantial evidence supports the Commissioner's final decision." *Webster v. Comm'r*, No. 3:19-cv-97-DAS, 2020 WL 760395, at *3 (N.D. Miss. Feb. 14, 2020). "In other words, the new rules are an attempt to eliminate confusion about a hierarchy of medical sources. . . . Reviewing courts, therefore, will now look first and foremost simply to whether substantial evidence exists to support an ALJ's opinion and not whether one opinion was correctly weighted in relation to any other(s)." *Id.*

with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements.    20 C.F.R. § 404.1520c(a), (c)(1)-(5).    However, supportability and consistency are the most important factors.    *See* 20 C.F.R. §§ 404.1520(b)(2), 404.1520c(a).    Supportability means the degree to which objective medical evidence supports the medical opinion at issue, and consistency looks to the consistency between different medical opinions across the record.    20 C.F.R. § 404.1520c(c)(1)-(2).[4]

The new rule also changed the articulation requirements for how the ALJ considers each medical opinion.    The new articulation requirements state:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

---

[4] "With respect to 'supportability,' 'the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase,'" and consistency is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Luckett v. Kijakazi*, No. 4:20-CV-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)) (quoting *Vellone v. Saul*, No. 1:20-CV-00261-RAK-HP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021).    "Considering the newness of the regulations, there is a dearth of caselaw [at present] concerning what constitutes a sufficient 'explanation' of supportability and consistency under 20 C.F.R. § 404.1520c(b)(2)." *Liguez v. Kijakazi*, No. 4:20-CV-02798, 2021 WL 4943321, at *4 (S.D. Tex. Aug. 11, 2021), *report and recommendation adopted sub nom. Liguez v. Comm'r of Soc. Sec.*, No. 4:20-CV-2798, 2021 WL 4941997 (S.D. Tex. Oct. 22, 2021).

20 C.F.R. § 404.1520c(b)(1)-(2); *see Moore v. Comm'r*, No. 3:20-CV-241-SA-DAS, 2021 WL 2834395, at *2 (N.D. Miss. July 7, 2021) (finding that the medical source regulations do not "require the ALJ to expressly address the persuasiveness of every opinion within every report").

Here, Plaintiff argues the ALJ rejected both the opinions of the SAMCs and Dr. Froelich and in doing so, improperly substituted his own lay opinion in formulating the RFC [Dkt. 17 at 12]. The Commissioner rejoins that the ALJ applied the correct rules for evaluating medical evidence and that the ALJ could freely find the doctors' opinions unpersuasive and not adopt any one opinion in its entirety. [Dkt. 18 at 4-5]. Upon review of the totality of the record, it is clear the ALJ applied the correct legal standard for assessing medical evidence for claims filed after March 27, 2017[5] and properly assessed the supportability and consistency of the referenced medical opinions[6] [TR 20-21].

As an initial matter, the ALJ determines whether a claimant's severe impairments and functional limitations prevent her from working. Any statements by Dr. Froelich (or any other physician for that matter) as to whether Plaintiff can work remain opinion evidence, which "is inherently neither valuable nor persuasive to the issue of whether [claimant is] disabled." *See* 20 C.F.R. § 404.1520b(c); *Neely v. Barnhart*, 512 F. Supp. 2d 992, 997 (S.D. Tex. 2007) (*citing Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)) (citations omitted) (a treating physician's statements that a claimant is "disabled" or "unable to work" are not entitled to any deference).

---

[5] The opinion states, "As for medical opinion(s) and prior administrative medical finding(s), we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources. We fully considered the medical opinions and prior administrative medical findings in accordance with the factors elucidated in 20 CFR 404.1520c(b) and 416.920c(b), which emphasized the supportability and consistency of the opinions/prior administrative medical findings with the objective medical evidence of record" [TR 20-21].

[6] Evidence is "inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. § 416.920b(b).

REPORT AND RECOMMENDATION - Page 14

Turning to the opinions of the SAMCs, the ALJ's determination states in pertinent part:

> The opinions of the State agency medical consultants Jeanine Kwun, M.D. and Dorothy Leong, M.D. are also unpersuasive. Dr. Kwum opined that the claimant was limited to a reduced range of light exertion including, frequent climbing of ramps and stairs, stooping, kneeling, and crouching; occasional balancing and crawling; and no climbing ladders ropes or scaffolds (Ex. 1A, 2A). Dr. Leong opined that the claimant was limited to a full range of medium exertion (Ex. 5A, 6A). The claimant submitted additional evidence of treatment after Dr. Kwum and Dr. Leong offered their analyses that shows the claimant is more limited than as opined by Dr. Kwum and Dr. Leong. This evidence, particularly the evidence from the claimant's primary care provider which included the claimant's lumbar spine MRI, as well as her rheumatology exam are more consistent with the limitations assessed in the above residual functional capacity (Ex. 9F, pp. 6-7; 11F, pp. 2-3; 13F, pp. 15, 17-18).

[TR 21]. By way of reminder, the SAMCs found Plaintiff could perform a limited range of light work or even medium work, with no manipulative limitations, while the ALJ ultimately found the totality of the record supported a more restrictive sedentary RFC assessment. A person that can do light work can also do sedentary work. The ALJ's determination addressed the SAMC opinions, citing specific evidence not in the record at the time of their review which supported the added limitations in the RFC beyond what the SAMCs found, including the lumbar spine MRI, X-rays and rheumatology exam contained in the records of Dr. Tammala (Exhibit 9F) and the Family Care Clinic/Dr. Froelich (Exhibit 11F, 13F). *Watts v. Saul*, No. 4:19-cv-00713-Y, 2021 WL 742888, at *6 (N.D. Tex. Jan. 11, 2021) (affirming ALJ's opinion imposing "a more restrictive RFC determination of light work (with additional limitations) than the medium work found by the SAMCs"), *report and recommendation adopted*, 2021 WL 734415 (N.D. Tex. Feb. 25, 2021).

The ALJ also thoroughly explained why he found the checkmark form submitted by Dr. Froelich unpersuasive, expressly noting that Dr. Froelich's own records did not support the extreme levels of restriction reported and that that the extreme nature of the restrictions espoused by Dr. Froelich were inconsistent with the other diagnostic and clinical evidence of record:

The claimant's primary care provider Dr. Froelich completed a Treating Physician's Clinical Assessment form provided to him by the claimant's representative on July 15, 2020. In this standardized, checkmark-box style form, Dr. Froelich opined that the claimant cannot lift even up to five pounds; is unable to use her hands; cannot bend, climb, balance, stoop, kneel, crouch, or crawl as part of her job duties; could stand and/or walk for less than two hours; could sit for up to two hours if allowed to stand every 10 to 15 minutes; and would require the freedom to rest frequently without restriction. He further opined that the claimant "cannot work" (Ex. 17F). These opinions are unpersuasive. Dr. Froelich's own treatment notes do not support such extreme levels of restriction. In this form, Dr. Froelich reports that the claimant's EMG/NCS of the hands supported a completely inability to use her hands, but her EMG/NCS was negative (Ex. 7F, p. 26). He also noted in his treatment notes that the claimant reported that "Lyrica has made everything 100% better" (Ex. 11F, p. 2). Moreover, the extreme nature of these restrictions is inconsistent with the other diagnostic and clinical evidence of record. The claimant's cervical and lumbar MRI show only mild to moderate neuroforaminal narrowing and no significant canal stenosis (Ex. 6F, pp. 240-241; 13F, pp. 17-18). Her orthopedic surgeon Dr. Papaila noted that the claimant responded well to her bilateral hand surgeries, and her rheumatologist Dr. Tummala noted normal power and grip strength (Ex. 7F, pp. 3, 13; 9F, pp. 6-7). Additionally, her pain management provider Dr. Harpavat noted that the claimant exhibited "quite significant pain behavior today as well as poor effort during her examination" (Ex. 3E, p. 6).

[TR 21]. The ALJ took care to discuss the supportability and consistency of the form, contrasting the checkmark form against the remaining record evidence, pointing out that Exhibit 7F provides an EMG/NCS of the hands which showed negative results for abnormal findings despite Dr. Froelich's report that the EMG/NCS supported Plaintiff's complete inability to use her hands [TR 21], and that Dr. Froelich's records reflected that he prescribed Plaintiff Lyrica, and that as of July 2, 2019, Plaintiff reported that "Lyrica has made everything 100% better" [TR 21]. *See Johnson v Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (Conditions controlled or controllable by treatment are not disabling). The ALJ also cited to Plaintiff's overall treatment history and own testimony regarding her abilities:

The claimant treated on only three occasions with her pain management provider and was noncompliant with her occupational therapy attendance (Ex. 3F). She has not treated with an orthopedist, neurologist, spinal surgeon, physiatrist, chiropractor, physical therapist, or any other specialist regarding her spinal

impairment.  Despite these impairments, the claimant can dress herself and bathe herself with some modifications, prepare a simple meal for herself, use a computer, and attend her children's sporting events and church weekly (Ex. 4E).

[TR 22].  The Fifth Circuit has recognized that opinions of treating physicians are not entitled to considerable weight when they are brief and conclusory and lack explanatory notes or supporting objective tests and examinations.  *Stephens v. Saul*, No. 3:20-CV-823-BH, 2020 WL 7122860, at *7 (N.D. Tex. Dec. 4, 2020) (citing *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017)); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011).  Here, the Medical Source Statement by Dr. Froelich itself contains no information as to why the objective evidence supports the severity of the limitations indicated [TR 950].  *Carter v. Berryhill*, 16-11702, 2017 WL 3641614, at *11 (E.D. La. July 26, 2017) ("A treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown"), *report and recommendation adopted*, 16-11702, 2017 WL 3620800 (E.D. La. Aug. 23, 2017).  The ALJ properly determined that the objective medical evidence, the claimant's treatment notes, and the claimant's own statements regarding symptom frequency, duration, intensity, and limiting effects do not support the severity of limitations in Dr. Froelich's MSS, and treating physicians lack controlling weight under the new rule.

Plaintiff further argues, citing *Loza v. Apfel*, that in rejecting the opinions of the SAMCs and Dr. Froelich, the ALJ selectively and improperly "picked and chose" certain aspects of the physicians' findings that supports the determination [Dkt. 17 at 11].  Specifically, Plaintiff argues the ALJ failed to consider the totality of the findings by Dr. Papaila, Dr. Tammala, and Dr. Harpavat which Plaintiff asserts are consistent with Dr. Froelich's findings.  As to Dr. Papaila, Plaintiff urges,

[W]hile Dr. Papaila initially noted a good response to surgery, he reported on November 12, 2018, that Ms. Behrens did not make the same progress after left thumb surgery as she had after right thumb surgery.  Further, on December 10, 2018 the Plaintiff again had pain in the left thumb area and on January 7, 2019 the doctor

reported that she was hurting everywhere, with the most severe pain at the left ulnar stylus wrist joint (Tr. 802).

[Dkt. 17 at 11-12]. As to Dr. Tammala, Plaintiff urges, "Dr. Tammala noted reduced lumbar range of motion, painful flexion and extension, and an antalgic gait (Tr. 846)" [Dkt. 17 at 12]. And lastly, as to Dr. Harpavat, Plaintiff contends,

> Dr. Harpavat's findings of a slow, antalgic gait; weakness and guarding of both legs; positive straight leg raising; an inability to toe or heel walk; markedly restricted lumbar spine range of motion in flexion and extension; weakness of right hip flexors; and severe low back paraspinal tenderness all over (Tr. 424, 426-427), are consistent with the limitations described by primary care physician, Dr. Froelich.

[Dkt. 17 at 12]. Plaintiff thus urges that the ALJ impermissibly relied on his own medical opinion in formulating the RFC.

Plaintiff is correct that in determining the RFC the ALJ must avoid "playing doctor and making [his] own independent medical assessment." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990)). But no requirement exists that the ALJ rely on any single medical opinion in its entirety, and the Fifth Circuit has never required that an RFC precisely match an expert medical opinion. *Dixon v. Comm'r*, No. 4:18-CV-634, 2019 WL 5875901, at *1 (E.D. Tex. Sept. 27, 2019). The ALJ may assess all the evidence in the record and "is not confined to picking one opinion and adopting it." *D.J.M. v. Berryhill*, No. 18-cv-0193, 2019 WL 1601491, at *4 (W.D. La. 2019) ("Like a trial judge or jury, the ALJ may weigh the competing opinions, take into consideration all of the other evidence of record, and make a finding that may not be exactly the same as the opinion of any one medical source."). The ALJ may fashion the RFC based on the whole record, resolve conflicts in evidence, and base the RFC on relevant evidence. *See Fleming v. Saul*, No. SA-19-CV-00701-ESC, 2020 WL 4601669, at *7 (W.D. Tex. Aug. 10, 2020) (citing *Taylor*, 706 F.3d at 602-03) ("Although the ALJ did not

adopt in its entirety any one medical opinion of record in fashioning his RFC, he also did not completely reject every opinion either.  Instead, the ALJ properly evaluated all of the medical opinions in the record… in accordance with the Section 404.1520c's more flexible methodology for analyzing opinion evidence and exercised his discretion to resolve conflicts in the evidence to assess the RFC based on all the relevant evidence in the record.").

Here, the ALJ examined Plaintiff's treatments and the findings from Plaintiff's doctors, dedicating multiple pages in the decision to considering and analyzing the medical and other evidence in the record that supported Plaintiff's physical RFC.  Consider, the following excerpts from the ALJ's determination:

> A December 1, 2017 electromyography/nerve conduction study (EMG/NCS) was negative (Ex. 7F, p. 26).
>
> In response, Dr. Papaila performed a resection of the right volar carpal ganglion cyst and volar wrist lipoma, resection of the right trapezium and reconstruction of the CMC joint with dorsal capsulorrhaphy to the flexor capri radialis on June 21, 2018 (Ex.. 7F, p. 11).  On October 2, 2018, he performed a similar surgery on the claimant's left thumb (Ex. 7F, p. 9) Dr. Papaila reported that the claimant "progressed nicely" and had done great since her surgeries.  When she reported some increased pain in her left scaphoid joint, Dr. Papaila gave her a radioscaphoid injection (Ex. 7F, p. 3).  He then referred the claimant for occupational therapy, but the claimant was discharged after failing to show up to consecutive appointments (Ex. 7, p. 13).
>
> At her January 7, 2019 visit to Dr. Papaila, the claimant had a psoriatic rash, but her ANA labs were negative.  Dr. Papaila diagnosed her with psoriatic arthritis and suggested a rheumatology evaluation (Ex. 7F, p. 3).  She consulted with rheumatologist Pratap R. Tummala, M. D. on January 14, 2019.  Her physical exam revealed tenderness and paraspinal spasm in the cervical spine, but also normal range of motion and no swelling; tenderness and reduced range of motion in the lumbar spine with pain on flexion and extension, but also no swelling and an equivocal straight leg raise.  Her power and grip strength were within normal limits.  She exhibited bilateral Bouchard's nodes, kyphosis, an antalgic gait, and positive fibromyalgia tender points.  Dr. Tummala diagnosed the claimant with polyarthritis and noted that the claimant's rash appeared to be eczema rather than psoriasis.
>
> Dr. Froelich prescribed the claimant Lyrica, and the claimant reported at her July 2, 2109 visit that "lyrica has made everything 100% better" (Ex. 11F, pp. 2-3).

[TR 19].

> The claimant began treating with pain management specialist Ajay Harpavat, M.D. for her lower back pain in January 2018.  Notably, at her initial visit on January 4, 2018, Dr. Harpavat noted that the claimant had "quite significant pain behavior today as well as poor effort during her examination" (Ex. 3F, p. 6) He recommended the claimant begin exercising with a goal of losing weight and counseled her to stop smoking… Her physical exam showed weakness and guarding in both legs, a slow antalgic gait with use of a cane, a positive straight leg raise on the left for L4 and L5 radiation, but no sensory deficits.  She reported worsened lower back pain after her epidural injection (Ex. 3F, pp. 3-5).

[TR 20].   The ALJ's review of the evidence demonstrates substantial compliance with the applicable regulations, and Plaintiff has not shown that the ALJ erred in his review of the record.[7] *See Liguez*, 2021 WL 4943321, at *9 ("The ALJ discussed the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c."); *Julie A. v. Comm'r*, :20-cv-1237, 2022 WL 813901, at *11 (N.D.N.Y. Mar. 17, 2022) (affirming ALJ's decision where "ALJ's determination was supported by substantial evidence," in light of all of Plaintiff's medical records and testimony); *Tederrell G. v. Comm'r*, 5:20-cv-1129, 2022 WL 827787, at *13 (N.D.N.Y. Feb. 22, 2022) (affirming the  ALJ's decision where "the ALJ appropriately considered and reached an RFC based on the entire record[.]"), *report and recommendation adopted*, 5:20-cv-1129, 2022 WL 823664 (N.D.N.Y. Mar. 18, 2022); *Martell-Rivera v. Comm'r*, No. 19-1545, 2021 WL 4342859, at *11 (D.P.R. Sept. 23, 2021) (affirming the ALJ's decision where the ALJ fully reviewed the record and recognized claimant "had more limitations than assessed by the consultative and non-examining consultants in 2014 and accommodated these additional limitations in the RFC finding for light work."); *Lyn P. v. Saul*,

---

[7] When determining the RFC, the ALJ adequately examined the objective evidence of record such as by considering Plaintiff's negative EMG/NCS, Plaintiff's rheumatology examination showing no swelling and normal power and grip strength in hands, and Plaintiff's MRI showing only mild to moderate neural foraminal stenosis and no central canal stenosis [TR 22].  The ALJ relies on objective medical evidence as support for the RFC by basing the RFC on Plaintiff's medical exams and tests (EMG/NCS, MRI, rheumatology examination, pain examination), Plaintiff's treatment notes (Lyrica benefiting Plaintiff, good response to bilateral hand surgeries), and Plaintiff's own statements regarding symptom frequency, duration, intensity, and limiting effects (can dress, bathe, prepare simple meals, attend church and sporting events, use a computer).  [TR 21-22].

No. 19 C 1596, 2021 WL 2823089, at *7 (N.D. Ill. July 7, 2021) ("[C]ontrary to Plaintiff's claims there was no evidentiary deficit, and the ALJ did not construct an RFC based on her own lay opinions; instead, the ALJ determined Plaintiff's RFC based on the evidence in the record, including medical evidence, diagnostic imaging, stage agency examinations and reports, and Plaintiff's own testimony and self-reports").  In sum, the Court finds substantial evidence supports Plaintiff's RFC.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends the Commissioner's decision be **AFFIRMED.**

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 4th day of July, 2022.**

REPORT AND RECOMMENDATION - Page 21

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE